**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jamal T. MERRIWEATHER,**
**Defendant–Appellant.**

**No. 93–4217.**

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1995.

Decided March 14, 1996.

---

Ronald B. Bakeman, Asst. U.S. Attorney, Sharon L. Long (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for Plaintiff-Appellee.

Elaine Mittleman (argued and briefed), Falls Church, VA, for Defendant-Appellant.

Before: MARTIN and RYAN, Circuit Judges; GILMORE, District Judge.*

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

RYAN, Circuit Judge.

This case requires that we explain, once again, the close and careful analysis trial courts should undertake before ruling on the admissibility of evidence of "other crimes, wrongs, or acts" under Federal Rule of Evidence 404(b).

Jamal Merriweather appeals from his conviction and sentence for conspiring to distribute cocaine and to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841, 846. Merriweather attacks his conviction and sentence on a number of grounds, but we find merit in only one: Merriweather's claim that Rule 404(b) barred the admission of taped phone conversations between Merriweather and persons involved in a drug conspiracy not charged in this case.

We reverse the conviction.

## I.

From 1990 to early 1993, Terry Bender was the central figure in a cocaine trafficking conspiracy in the Cleveland, Ohio, area. In March 1993, a federal grand jury returned a superseding indictment against nineteen persons for conspiring to distribute cocaine and to possess cocaine with the intent to distribute from 1990 through January 1993. Merriweather was among the conspirators named in the indictment's first count.

At Merriweather's trial, Federal Bureau of Investigation Agent Robert Fiatal testified that, in the summer of 1992, a drug task force comprising local, state, and federal law enforcement officers began investigating Terry Bender. The investigators tapped Bender's cellular telephone. Thirteen phone conversations were tape-recorded and introduced at trial against Merriweather. Generally, the tape-recorded conversations were between Bender and other members of the alleged conspiracy, with Bender discussing the purchase, sale, and distribution of cocaine. Merriweather was a participant in only one of the conversations; the one recorded on January 5, 1993. He told Bender that his "clientele" were "back in order now." He also asked Bender to "front" a "whole one"; that is, to provide a kilogram of cocaine for which Merriweather would pay later.

The government also introduced the testimony of Nasir Ahmad, Merriweather's cousin and alleged coconspirator. Ahmad testified that he began buying cocaine from Bender in April 1992, and that Bender began selling to Merriweather sometime before April 1992. Ahmad testified that he once observed Merriweather in possession of cocaine. Ahmad also testified that he and Bender used a pager to communicate regarding cocaine transactions, and that Merriweather had a pager of his own. Finally, Ahmad identified Merriweather's pager number in Bender's phone book, next to the name "Jamal."

The government also attempted to connect Merriweather with the "Bender conspiracy," as the parties have labeled it, through a sheet of paper investigators found in the trunk of a Cadillac that was parked in a storage unit leased by Bender's girlfriend, Donna Gordon. The sheet listed twelve numbers next to twelve names. The number "19,000" was written next to the name "Jamal."

The last direct link between Merriweather and the Bender conspiracy was the testimony of an indicted coconspirator, Antonio Michael Adams. Adams testified that he began to buy cocaine from Bender in late 1990. In 1991, a friend of Adams's, Darryl Rollins, offered Adams the chance to meet Merriweather in the hope that Merriweather would buy cocaine from Adams. Later, Adams mentioned Merriweather to Bender, and Bender said that Merriweather "was a pretty good guy" and that Merriweather "brought him [ (Bender) ] a lot of business."

Finally, the government introduced taped telephone conversations relating to the "Lee Jones conspiracy," as the parties have named it. The government, using Ahmad as the foundation-laying witness, introduced five taped conversations recorded in December 1992. Ahmad identified the voices in each conversation and recalled that the conversations occurred in December 1992. Generally, the conversations related to cocaine purchases by Ahmad and Merriweather from a cocaine supplier, Lee Jones, as part of a drug trafficking conspiracy for which Merriweath-

er was separately indicted, but which was not part of the alleged conspiracy for which Merriweather was on trial in this case. It is these tapes that Merriweather claims were received in evidence, in violation of Fed. R.Evid. 404(b).

Ahmad identified the participants in one conversation recorded on the tapes as himself, Merriweather, and Jones. Ahmad and Merriweather were speaking from Ahmad's house. The government read a sentence from the transcript of the tape recording: "My main man, I need to get on, man, what's up?" Neither the prosecutor nor Ahmad identified the person who spoke the sentence. Ahmad testified that the expression "I need to get on" in drug vernacular means, I need to "[g]et some cocaine." In another taped conversation played for the jury, Ahmad told Jones that Merriweather was in the back room of the house "[c]ooking cocaine into crack." Finally, in still other conversations, Jones reported to Merriweather that Jones's cocaine inventory had dwindled so much that Jones had none to sell to Merriweather.

Merriweather's counsel objected to the admission of these conversations as prohibited by Fed.R.Evid. 404(b). The trial court held a hearing and the objection was overruled. The jury found Merriweather guilty, and the district court sentenced him to 276 months imprisonment.

## II.

### A.

In reviewing a district court's decision to admit evidence of "other crimes, wrongs, or acts" under Rule 404(b), we first review for clear error the district court's factual determination that the "other ... acts" occurred. Second, we examine *de novo* the district court's legal determination that the evidence was admissible for a legitimate purpose. Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect. *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir.1994) (citing *United States v. Gessa*, 971 F.2d 1257, 1261–62 (6th Cir.1992) (*en banc*)), *cert. de-*

*nied,* — U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995).

### B.

Rule 404(b) provides in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). We discussed the application of Rule 404(b) in circumstances similar to the present case in *Johnson*, 27 F.3d 1186. In *Johnson*, the defendant was charged with possession of cocaine base with the intent to distribute. Before trial, the government notified the district court that it intended to introduce evidence showing that the defendant had made two prior drug sales within a month of the charged possession. The government asserted that the evidence was admissible under Rule 404(b) to show "preparation, plan, motive, intent, all those in this case." *Id.* at 1189.

In the course of the trial, the court instructed the jurors three times concerning the purpose for which the uncharged prior drug sales might be considered. In the first instruction, the court told the jurors that the evidence "may be admissible for some purpose, perhaps to show motive or some other relevant activity." *Id.* at 1190 (emphasis omitted). In the second instruction, the court told the jurors they might consider the prior sales as "proof as to method of operations." *Id.* (emphasis omitted). Finally, at trial's end, the court instructed: "[Y]ou can only consider [the prior acts] for deciding whether the defendant had the necessary intent to commit the crime charged or as evidence of preparation, plan and knowledge in the commission of the crime charged." *Id.* (emphasis omitted).

We explained in *Johnson* that none of the six or seven reasons identified by the trial court for admitting the prior acts evidence was "in issue" in the case, with the possible exception of "intent." We explained that in

ruling on the admissibility of uncharged misconduct evidence submitted under Rule 404(b), the district court must always determine

> whether one of the factors justifying the admission of "other acts" evidence is material, that is, "in issue," in the case, and if so, whether the "other acts" evidence is probative of such factors. The court must also determine whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*Id.*

We concluded, in *Johnson*, "that it was likely that the three substantially incorrect and thoroughly contradictory instructions on the permissible use of the [other acts] evidence ... confused the jurors and even unwittingly encouraged them to use the evidence for the purpose expressly forbidden in the [first sentence of Rule 404(b)]." *Id.* at 1194.

We ultimately held in *Johnson* that the trial court's mishandling of the 404(b) evidence in that case was harmless, primarily because there was no objection by the defendant and because the properly admitted evidence of the defendant's guilt was overwhelming. *Id.*

*Johnson* is instructive not only because there we were at pains to explain the analysis trial courts should conduct in ruling on the admissibility of 404(b) evidence, but because the trial court's erroneous instructions in that case are a virtual mirror of the trial court's instructions to the jury in this case, although, here, there were two rather than three erroneous instructions concerning the proper purpose for which the jurors might consider the evidence of the Jones tapes.

Here, the trial court got started correctly, but ultimately lost its way. When the evidence from the Jones tapes was offered by the government, the district court, quite properly, asked the government to explain the purpose for which it proposed to offer the Jones conversations:

> [THE COURT:] [D]o you want to indicate on the record the purposes for which you are seeking to introduce 404(b) evidence?

> [AUSA:] Yes, sir.... [I]t is the government's contention that those [conversations] will be used to show that the defendant's *intent, plan, knowledge, identity and absence of mistake,* as the Court will hear, there's one telephone conversation that he has in the Bender case which he talks about getting, wanting Bender to front him a kilo of cocaine and says he has enough for a quarter. I think the Jones' tapes show his *intent,* your Honor, *to acquire cocaine.*

> His *identity, I don't know whether in this case there's a question whether Jamal Merryweather [sic] on the Bender tape is Jamal Merryweather [sic] or not.* I think the Jones' tape, being that there are five of them, the telephone conversations are have *very similar,* certainly go to the *identification* of this Defendant.

> I think it also goes, your Honor, to *absence of mistake,* and I think those show the clear *intent to obtain drugs* and it's clearly an *absence of mistake* on behalf of the *government.*

(Emphases added.)

It thus appears that the prosecutor first broadly argued that the Jones conversations were admissible to prove "intent, plan, knowledge, identity and absence of mistake." Then, the prosecutor explained more specifically that the Jones conversations proved: (1) *intent* to acquire cocaine; that is, the Jones conversations showed that the defendant wanted cocaine and thus clarified the Bender conversation, in which the defendant asked Bender to "front" a kilogram of cocaine; (2) *identity;* that is, to identify the defendant's voice on the Bender taped conversation, in which no names were used; and (3) *absence of mistake* on behalf of the government. Presumably, the prosecutor meant to assert by the third justification that the tape would prove that the government was not mistaken in prosecuting Merriweather.

After that unhelpful recitation by the prosecutor of the shifting purposes for which the government sought to introduce the Jones conversations, the district court ruled that "the evidence does appear to be probative of material issues other than character" and admitted the Jones tapes. The court did not,

at the time of receiving the evidence, identify which of the five purposes or justifications listed by the prosecutor for offering the evidence—"intent, plan, knowledge, identity [or] absence of mistake"—was the court's basis for receiving it. Neither did the court undertake, on the record at least, in the necessary Federal Rule of Evidence 403 balancing of the probative value of the evidence against its potential for substantial prejudice. After the government played the Jones tapes, the district court instructed the jury as follows:

> You have heard testimony that the defendant committed some acts other than the ones charged in the indictment in this case. You cannot consider this testimony as evidence that the defendant committed the crime that he's on trial for now. Instead, you can only consider it in connection with the issues of the defendant's *opportunity, intent, preparation, plan, knowledge,* and *identity* in this particular case. Do not consider it for any other purpose. Remember that the defendant is on trial here only for the charges that are connected with the Terry Bender matter, not for the other acts.

(Emphases added.)

In addition to this midtrial instruction, the court provided a final limiting instruction at the end of trial:

> You have heard the testimony that the defendant committed some acts other than the ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he's on trial for now. Instead you can only consider it for the limited purpose of deciding whether it is probative of *opportunity, intent, preparation, plan, knowledge, identity* or *absence of mistake.* Do not consider it for any other purpose.
>
> Remember that the defendant is on trial here only for conspiracy to commit the crime of *distributing or possessing with intent to distribute cocaine* in violation of federal law, not for the other acts. Do not return a guilty verdict unless the government proves the crime charged beyond a reasonable doubt.

(Emphases added.)

Thus, the district court's midtrial instruction advised the jurors that they could con-

sider the taped conversations of Merriweather's involvement in the uncharged Jones conspiracy for purposes of proof of Merriweather's "opportunity, intent, preparation, plan, knowledge, and identity" and, in its final instruction to the jury, the court repeated those purposes and added "absence of mistake."

Manifestly, the proffered "other acts" evidence was not admissible for all the purposes identified by the trial judge in the two jury instructions and, equally manifestly, the jurors could not have had the vaguest notion of the limited *proper* purpose for which they might.have considered the evidence.

The trial court's recitation of seven of the nine purposes named in Rule 404(b) in the precise order as they appear in the text of that rule as its grounds for admitting the Jones conspiracy as "other acts evidence," suggests strongly that the court did not have a clear idea what theory may have justified receiving the evidence.

### C.

We undertake, once more, to explain how Rule 404(b) is properly applied:

■ Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is "in issue" often depends on the defendant's theory and the proofs as they develop. Nevertheless, the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.

■ After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose,

whether to prove *motive* or *intent* or *identity* some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the *specific* purpose for which they may consider the evidence. *Johnson,* 27 F.3d at 1193.

 In this case, the district court plainly erred by instructing the jury that the Jones conversations were admissible to prove "opportunity," "preparation," "plan," "knowledge," or "absence of mistake." *Opportunity* was not in issue; Merriweather's defense did not assert a lack of opportunity and, in any event, the Jones conversations were of no probative value in showing that Merriweather had an opportunity to join the Bender conspiracy. *Preparation* and *plan* were not in issue; it was impossible to assert that Merriweather's dealings with Jones were prefatory steps to dealing with Bender or part of a plan to deal with Bender. Likewise, *knowledge* and *absence of mistake* were not in issue, and the evidence does not suggest such issues; Merriweather never claimed that he was unknowingly dealing in cocaine or was unwittingly engaging in unlawful activity. Also, absence of mistake "on behalf of the government" is not a legitimate basis to admit other acts evidence under Rule 404(b). Rather, it is a restatement of the primary reason for which the evidence is *not* admissible; that is, to suggest that the defendant is guilty (the government is not mistaken) because he committed the same or other crimes before.

Among the litany of purposes for admitting the evidence mentioned in the court's instructions, which were anything but "limiting," only *"identity"* and *"intent"* were arguably proper purposes. The government offered a January 5, 1993 tape, claiming it recorded a conversation between Bender and Merriweather. Merriweather, however, never entirely conceded that he was a party to the conversation recorded on the tape. His counsel premised his closing argument on the possibility that the jury *might* find that *Merriweather* was a conversant on the tape. Thus, giving every benefit of the doubt to the defendant, it can be said that Merriweather made identification of the voice on the Bender tape an issue in the case.

 There remains, however, the question whether the proper application of Rule 403's balancing requirement—a balancing the court appears not to have undertaken—precludes admitting the Jones conversations to prove *identity.* One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof. *Huddleston v. United States,* 485 U.S. 681, 688, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988). Playing the *Jones* tapes to prove that the voice on the *Bender* tape belonged to Merriweather was the most unfairly prejudicial means of proving identity that was available to the government. There were other means to prove Merriweather's identity on the Bender tape. Indeed, the government had already employed the most direct method: Ahmad, Merriweather's cousin, identified the defendant's voice on the Bender tape. Also, less directly, Ahmad could have identified Merriweather's voice on nonincriminating portions of the Jones tapes; then the jury could have compared that voice to the one on the Bender tape.

 Another consideration, to use Justice Cardozo's expression applied in another context, is whether the "reverberating clang" of the evidence that Merriweather committed the same or similar crime on another occasion will "drown [the] weaker sound[ ]" of the Jones tapes; proof of Merriweather's identity, leaving the jury to hear only the inference that if the defendant did it before, he probably did it again. *See Shepard v. United States,* 290 U.S. 96, 104, 54 S.Ct. 22, 25–26, 78 L.Ed. 196 (1933). The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose.

Of course, no such narrowly limiting instruction was given in this case.

We conclude that the conversations on the Jones tapes showing that Merriweather was involved in a separate, uncharged drug conspiracy, even if admitted for the ostensible purpose of proving only that the voice on the Bender tape was Merriweather's, particularly in light of the court's erroneous instructions, was more substantially prejudicial than probative and should not have been admitted.

The remaining possible proper purpose for admitting the Jones conspiracy tapes was to prove Merriweather's *intent* to participate in the charged conspiracy. *Johnson* held that other acts evidence is admissible, subject of course to Rule 403 balancing, under Rule 404(b) if specific intent is a statutory element of the offense. In *United States v. French,* 974 F.2d 687, 695 (6th Cir.1992), *cert. denied,* 506 U.S. 1066, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993), *and cert. denied,* 507 U.S. 978, 113 S.Ct. 1431, 122 L.Ed.2d 798 (1993), *and cert. denied,* —— U.S. ——, 115 S.Ct. 158, 130 L.Ed.2d 96 (1994), we held that conspiracy is a specific intent crime. Consistent with that holding, other courts have explained that, in order to convict a defendant of conspiracy to possess and distribute narcotics, "the government must prove that he 'had the specific intent to further the common unlawful objective' of the conspiracy." *United States v. Mitchell,* 49 F.3d 769, 775 (D.C.Cir.) (quoting *United States v. Tarantino,* 846 F.2d 1384, 1392 (D.C.Cir.), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83, *and cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988)), *cert. denied,* —— U.S. ——, 116 S.Ct. 327, 133 L.Ed.2d 228 (1995). Stated differently, "Conspiracy to distribute is a specific intent crime; that is, the government must prove that the defendant conspired to distribute, with the intent to distribute, a controlled substance." *E.g., United States v. Maholias,* 985 F.2d 869, 879 (7th Cir.1993). Other circuits permit evidence of prior drug transactions to prove that an alleged conspirator had the specific intent to distribute or possess drugs. *Mitchell,* 49 F.3d at 775; *United States v. Hooker,* 997 F.2d 67, 76–77 (5th Cir.1993); *Maholias,* 985 F.2d at 879; *United States v. Spinosa,* 982 F.2d 620, 628 (1st Cir.1992); *United States v. Adrian,* 978 F.2d 486, 492 (9th Cir.1992); *United States v. Perez–Garcia,* 904 F.2d 1534, 1545 (11th Cir. 1990); *United States v. Doran,* 882 F.2d 1511, 1524 (10th Cir.1989); *United States v. Tedder,* 801 F.2d 1437, 1444 (4th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987); *United States v. Lewis,* 759 F.2d 1316, 1349 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985). Under this line of authority and *Johnson,* the Jones conversations were admissible for a legitimate purpose: to prove Merriweather's specific intent to distribute and possess cocaine.

However, even if we assume that the district court balanced the probative value of the tapes as proof of specific intent against the unfair prejudice the evidence was likely to engender—and there is no indication in the record that it did—we must conclude that a finding in favor of admissibility was an abuse of discretion.[1] The government had a number of means available to it to prove Merriweather's specific intent to distribute and possess cocaine, without showing that he was involved in another, uncharged, drug conspiracy. For example, in the Bender conversation, Merriweather informed Bender that the defendant's "clientele" was back in order, and tried unsuccessfully to persuade Bender to "front" him a kilogram of cocaine. Then, Merriweather offered to purchase a quarter of a kilogram of cocaine, but Bender refused to sell that small an amount. Although the speaker's identity in that conversation with Bender was technically in issue, Ahmad identified Merriweather in the Bender conversations; thus, the government could readily prove Merriweather's specific intent without the Jones conversations.

---

1. Of course, as we have observed, the district court did not expressly engage in the Rule 403 balancing, so we simply assume that the court implicitly held that balance favored admission. *Johnson,* 27 F.3d at 1193. While we are willing to make this assumption in the absence of an express balancing, we do so reluctantly, and repeat that district courts should make an express determination under Rule 403.

The government's legitimate need to introduce the Jones conversations was slight, while the evidence carried a serious danger of unfair prejudice. The danger was very great that the jurors, rather than consider the Jones conversations for the narrow, precise, legitimate purpose of proving Merriweather's specific intent to distribute and possess cocaine, would far more likely infer that just as Merriweather conspired with Jones, so he conspired with Bender—the very inference that Rule 404(b) forbids. That is particularly so in light of the court's "all purpose" instructions which did not limit the purpose for the evidence to specific intent.

Finally, the erroneous admission of the Jones conversations was not harmless. In determining whether an error is harmless, we "must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The final instructions left the jury free to consider the Jones conversations for *opportunity, intent, preparation, plan, knowledge, identity,* and *absence of mistake.* Only identity and intent were legitimate purposes, but neither was explained to the jury. Although there was other evidence to support the conviction, the Jones conversations provided the jury with clear, forceful, and detailed evidence that Merriweather was actively engaged in a separate drug trafficking conspiracy for which he was not on trial, and, given the court's improper instruction, permitted the jury to draw the very inference forbidden by Rule 404(b). We are unable to say with "fair assurance" that the jury's verdict "was not substantially swayed" by the improperly received "other acts" evidence. *Id.* at 765, 66 S.Ct. at 1248.

## III.

In light of our conclusion that the conviction must be set aside for the reasons we have discussed, we decline to reach the remaining assignments of error.

## IV.

The judgment of conviction is **REVERSED.**