UNITED STATES of America,
Plaintiff–Appellee,

v.

Kevin Eugene TUCKER and Johnny
Claypool, Jr., Defendants–
Appellants.

Nos. 00–5003, 00–5051.

United States Court of Appeals,
Sixth Circuit.

Oct. 2, 2001.

Before BOGGS, DAUGHTREY, and FARRIS,* Circuit Judges.

* The Hon. Jerome Farris, United States Court of Appeals for the Ninth Circuit, sitting by designation.

PER CURIAM.

Following a jury trial, the defendants, Kevin Tucker and Johnny Claypool, appeal from judgments of conviction stemming from the theft of a truck trailer from Ohio and the subsequent transportation of the trailer into Kentucky. Tucker was found guilty of conspiracy to transport stolen goods in interstate commerce and of aiding and abetting the transportation of stolen goods in interstate commerce. Claypool was convicted on the aiding and abetting charge.

On appeal, Tucker challenges the district court's denial of his motion for a mistrial, the court's admission of evidence of other crimes under Federal Rule of Evidence 404(b), and its refusal to give a requested instruction that being an accessory after the fact is a lesser included offense of the crime of interstate transportation of stolen goods. Claypool also challenges the court's jury instruction, and he contends that the evidence used to convict him was legally insufficient. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Driven by an employee of B & B Transportation, the truck in question had originally left Trenton, Ohio, on October 22, 1996, destined for Marietta, Georgia, and loaded with 2,205 cases of Miller Lite beer. Shortly after leaving the distribution lot, however, the driver detected a problem with the air lines to the trailer and, in accordance with his employer's instructions, unhitched the trailer and left it in a lot used typically to park empty trailers awaiting loading. Later that afternoon, Rodney Grubb and Clarence

Hoskins, trailer mechanics for B & B Transportation, along with Terry Hicks, a non-employee who happened to be related to Hoskins by marriage, arrived at the lot, repaired the air hoses, and left. The following afternoon, another B & B Transportation driver was dispatched to the lot to re-hitch the trailer and start the journey toward Georgia. Upon arriving at the lot, however, the driver discovered that the trailer, as well as its cargo, was no longer there.

Several days later, local police in Cynthiana, Kentucky, were told by an informant that large quantities of beer were being sold in the area to bootleggers. A subsequent investigation recovered 91 cases of Miller Lite beer in an abandoned home and 952 additional cases loaded onto a rented Ryder truck. Although the defendants denied any knowledge of how the beer arrived in Kentucky or, initially, of the fact that the beer had been stolen, co-defendant Terry Hicks testified at trial that he had informed Tucker in late October that a loaded, unsealed trailer was parked in a dark, unsecured lot near Trenton, Ohio. The very next day, Tucker took Hicks to a Kentucky truck stop where they picked up the loaded trailer waiting there and drove it to a farm in Kentucky owned by Tucker's family. A portion of the cargo from the trailer was later loaded onto a flatbed truck and sold to bootleggers, and the remaining beer was loaded onto the Ryder truck that was eventually recovered by law enforcement authorities.

In addition, several individuals with whom the defendants came in contact during late October and early November 1996 testified that Tucker and Claypool were well aware of the contraband nature of the beer they were transporting and selling. For instance, John Johnson related that Tucker originally claimed that the large quantities of beer were won in a contest, but later discussed with Claypool how the beverages had been stolen with the help of a co-conspirator on the "inside" of the shipping operation. Johnson also testified that Claypool himself stated that the beer had been stolen.

William Banks also provided testimony regarding Tucker's efforts, in the presence of Claypool, to have Banks sell the beer for them at a price of only $5.00 per case. Additionally, Banks heard Tucker say that the beer in their possession came from a "hijack from a truck that was broke down on the side of the road."

Given this evidence, the jury was able to find that the defendants were aware of the fact that the beer recovered in Kentucky had been stolen from Ohio and that Tucker himself was involved in the plans to effectuate the theft and disposal of the stolen goods. Consequently, the jurors found Tucker guilty of both conspiracy to transport and of aiding the abetting the transportation of stolen goods in interstate commerce. The jury also determined that Claypool was guilty of aiding and abetting Tucker. From those convictions, the defendants now appeal.

## DISCUSSION

■ Defendant Tucker first asserts that the district court abused its discretion in denying his motion for a mistrial after a Kentucky state trooper testified that the trooper had previously participated in "several investigations" involving Tucker. He contends that he was unduly prejudiced because the trial judge did not *immediately* offer a limiting instruction on how the jury was to evaluate the testimony.

We review the district court's denial of a motion for a mistrial for an abuse of discretion. *See United States v. Carroll,* 26 F.3d 1380, 1383 (6th Cir.1994). Under the facts presented in this appeal, the district judge clearly did not abuse his discretion

in denying Tucker's motion for a mistrial, especially for the reason now advanced by the defendant before this court. Although the line of questioning propounded by the Assistant United States Attorney ("How do you know Mr. Tucker? Do you know him through investigations you've conducted before?") was improper, we conclude that the trooper's brief statement in response did not prejudice the defendant in light of the strong evidence of Tucker's guilt. Furthermore, the district judge did indeed offer a limiting instruction to the jury, directing them to consider the evidence of prior misdeeds only for certain purposes. Although the cautionary instruction was not given *immediately* after the offending question and answer, the district judge did give the instruction at the end of that witness's testimony—after only seven more complete questions were propounded by the government, comprising a mere two pages of additional transcript. In light of the overwhelming evidence of Tucker's guilt of the offenses for which he was convicted, we cannot say that the district court abused its discretion in waiting the few moments it did to caution the jury about the limited use it could make of this testimony.

In a related issue, Tucker also asserts that the district court erred in admitting evidence of a prior crime committed by the defendant. In following up on the improperly broad question regarding whether the Kentucky state trooper knew Tucker "through investigations [he had] conducted before," the prosecutor guided the witness through a declaration that Tucker had previously been convicted for receiving a stolen all-terrain vehicle.

As a general rule, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *See* FED.R.EVID. 404(b). As recognized in Rule 404(b), however, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *Id.*

■ We have previously set out the steps to be followed by a district judge both in determining whether Rule 404(b) evidence should be admitted and in minimizing the potential for undue prejudice resulting from such admission. First, "[u]pon objection by the defendant, the proponent of the evidence ... should be required to identify the *specific* purpose or purposes for which the government offers the evidence of 'other crimes, wrongs or acts.'" *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir.1996). Second, the district court must determine whether the stated purpose "is 'material'; that is, whether it is 'in issue' in the case." *Id.* at 1077. Third, if the court finds the purpose is in fact material, the district judge must, prior to admitting the evidence of other crimes, wrongs, or acts, determine whether "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403." *Id.* Finally, "[i]f the evidence satisfies Rule 403, then, after receiving the evidence, the district court must 'clearly, simply, and correctly' instruct the jury as to the *specific* purpose for which they may consider the evidence." *Id.* (citing *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)).

■ Commendably, the district judge in this case ruled as to each of the *Merriweather* requirements. Nevertheless, the court abused its discretion in determining that the evidence of Tucker's prior conviction had any relevance to the stated purpose for its admission, *i.e.*, Tucker's "knowledge" that the beer he was selling

in Kentucky had been stolen. *See United States v. Mack*, 258 F.3d 548, 553, n. 1 (6th Cir.2001) (question of admissibility of Rule 404(b) evidence is to be reviewed under the abuse of discretion standard). In fact, neither the prosecution nor the district judge offered any explanation of how the fact that the defendant had, in the past, received a stolen all-terrain vehicle would help establish Tucker's knowledge of the contraband nature of the Miller Lite beer in his possession. With no logical connection between the prior crime and a material issue in the present trial, the district court should not have permitted the jurors to hear about the defendant's past criminal activities. We conclude that any error in the admission of such testimony was, however, harmless in this case, because of the overwhelming evidence of Tucker's guilt, as shown through the testimony of numerous witnesses.

■ Both defendants contend that the district court erred in denying a special request that the jurors be instructed that they could find them guilty of the alleged lesser included offense of being an accessory after the fact. "[I]f a defendant asks for a lesser included offense instruction, it is generally reversible error not to give it." *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir.), *cert. denied*, 531 U.S. 881, 121 S.Ct. 193, 148 L.Ed.2d 134 (2000). No lesser included offense instruction need be given, however, if a defendant cannot establish both that "(1) the elements of the lesser offense are a subset of the elements of the charged offense; and (2) the evidence would allow a rational jury to find the defendant guilty of the lesser offense but not guilty of the charged offense." *Id.* at 605 (citing *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)).

■ As Tucker concedes in his appellate brief, "accessory after the fact is not a necessarily lesser included [offense] to interstate transportation of stolen goods or conspiracy to commit interstate transportation of stolen goods." *See United States v. Rivera–Figueroa*, 149 F.3d 1, 6 n. 5 (1st Cir.1998) (recognizing that although an accessory after the fact offense shares some common elements with the principal crime and involves a lesser punishment, "the accessory offense is not a lesser *included* offense because it requires proof that the principal offense does not, namely, that the defendant assisted after the principal crime was committed"). Because, therefore, all elements of an accessory after the fact offense are not also included within the charged offense, the district court did not err in refusing to give the requested instruction.

■ Finally, defendant Claypool challenges the legal sufficiency of the evidence to support his conviction for aiding and abetting the interstate transportation of stolen goods. He argues before this court that the jury verdict against him must be reversed because he testified at trial that he merely helped unload beer from the trailer in Kentucky and had no knowledge that the trailer and beer were stolen.

In analyzing a challenge to the sufficiency of the evidence adduced at trial, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we may not reweigh the evidence, reevaluate the credibility of the witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993).

280

Our review of the record indicates that, in contradiction to Claypool's trial testimony, there was ample evidence to establish the defendant's prior knowledge that the beer and trailer were stolen. For example, John Johnson stated unambiguously that Claypool told him the beer had been stolen, and he also testified that Claypool later had to be admonished by Terry Hicks to refrain from discussing the fact that "an inside person" assisted them with the heist.

Given the conflicting accounts of defendant Claypool's complicity in the charged offenses, it was the jury's duty to resolve the credibility dispute. *See United States v. Jones,* 124 F.3d 781, 784 (6th Cir.1997). By its verdict, the jury obviously credited the testimony offered by the prosecution witnesses. Consequently, we find that Claypool's challenge to the sufficiency of the evidence used to convict him is without merit.

### CONCLUSION

For the reasons set out above, we conclude that the issues raised by the defendants do not support a finding of reversible error. We therefore AFFIRM the judgments of conviction entered against defendants Tucker and Claypool by the district court.