**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0871n.06**
**Filed: October 25, 2005**

**Case No. 04-5844**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| **G. DALE MURRAY** | ) | **DISTRICT OF KENTUCKY** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

**BEFORE: GUY, BATCHELDER, GILMAN, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Dale Murray appeals his conviction and sentence under 18 U.S.C. § 1344 for bank fraud and argues that the district court improperly admitted testimony of his lavish lifestyle. Because ample evidence supports the jury's verdict, and because the testimony in question was relevant to the jury's assessment of Murray's motive and intent, we affirm his conviction and sentence.

**Background**

Murray was ostensibly a business man. He formed a number of coal companies in Tennessee and sold interests in those companies to investors. Using the money he received, Murray leased coal properties. He never mined any coal but instead embarked on a journey of profligate spending that ended in federal prison.

At the outset of his enterprise, Murray befriended codefendant Timothy Weddington, who showed interest in Murray's alleged business expertise. Weddington was the president of Salyersville National Bank, and he extended an unsecured $100,000 loan to Murray despite Murray's questionable credit. In addition, the bank honored checks drawn by Murray on coal company accounts containing insufficient funds. Soon, the bank's board of directors became concerned with Murray's sizeable unsecured debt to the bank, and it ordered Weddington not to extend additional credit to Murray.

Murray, who needed a continuous supply of money to support his excessive spending, asked Robert Graff, a coal company investor, to obtain a loan on Murray's behalf. Weddington, who knew that the money was intended for Murray rather than Graff, agreed to the arrangement. Graff signed a note stating that he would use the loan proceeds to purchase stock, but he actually transferred the funds to Murray. Some time later, Weddington made a second loan. Although the note showed Robert Graff as the borrower, Murray forged Graff's signature on the note with Weddington's knowledge. Graff was unaware of the second loan. Next, Weddington concealed an overdraft of one of Murray's accounts by obtaining a short-term loan from the First National Bank of Paintsville and depositing the funds in Murray's account. In spite of the board's prohibition on lending funds to Murray, Weddington assured the Paintsville bank that Salyersville National Bank would guarantee the loan. Weddington and Murray also entered into an accommodation transaction with Turner Consulting in which the bank loaned money to Turner for capital investment. For a fee, Turner transferred the funds to Murray. All of the loan documents prepared by Murray and Weddington for these loans provided false information regarding the intended use of the loan proceeds, and none of the documents disclosed that funds would be channeled to Murray. Murray

2

and Weddington were both indicted for bank fraud. Weddington pled guilty, and Murray was convicted by a jury. The district court sentenced Murray to thirty-six months in prison.

## Analysis

**I.      The jury's verdict is supported by ample evidence.**

Murray argues that there was insufficient evidence to support the verdict in his case. We review a district court's refusal to grant a motion for judgment of acquittal *de novo*. *United States v. Kone*, 307 F.3d 430, 433 (6th Cir. 2002). We may reverse the district court's decision only if, after viewing the facts in the light most favorable to the prosecution, we determine that no rational jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To be guilty of bank fraud, Murray must have knowingly executed, or attempted to execute, a scheme or artifice to defraud a financial institution or to obtain any of the property under its control by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1344. We have held that the bank fraud statute encompasses the following elements: (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC. *United States v. Hoglund*, 178 F.3d 410, 412-13 (6th Cir. 1999). The falsehood employed by the defendant must be material. *Neder v. United States*, 527 U.S. 1, 25 (1999).

Murray's acts satisfy each of the elements described above. He knew that the Salyersville National Bank's board of directors had instructed Weddington not to make additional loans to him. In spite of that knowledge, he and Weddington orchestrated loan transactions through third parties and under false pretenses. Furthermore, their falsehoods were material. Had the Salyersville National Bank's board of directors known that the funds transferred to Graff and Turner were

3

intended to be relinquished to Murray, it would not have permitted the loans. Because the evidence demonstrates that Murray knowingly participated in a scheme to obtain funds from Salyersville National Bank through material falsehood, we affirm the district court's refusal to grant a motion for judgment of acquittal.

**II.     Testimony of Murray's extravagant lifestyle went to his motive and intent.**

Murray argues that the district court erred by admitting evidence of Murray's lavish lifestyle. Testimony at trial revealed that Murray spent hundreds of thousands of dollars on travel, dining and women. He carried large amounts of cash and frequented strip clubs. One witness even testified that Murray sometimes bought cars for the dancers. Murray claims that the testimony should have been excluded because: (1) it was not probative of a material issue other than character; (2) its probative value was outweighed by its prejudicial effect; (3) the purposes for which the evidence was offered were so general in scope as to be vague and unduly confusing to a jury; (4) the limiting instruction was likewise too broad in scope; and (5) the introduction of such evidence was unnecessary because the government not only had other methods of proof available but had, in fact, introduced such proof. We find Murray's arguments meritless.

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

In *United States v. Merriweather*, we held that the government must identify a specific purpose for which character evidence is offered. 78 F.3d 1070, 1076-77 (6th Cir. 1996). The purpose must be material and at issue in the case. *Id.* In addition, Rule 403 of the Federal Rules of

4

Evidence requires that the probative value of the evidence be substantially outweighed by the danger of unfair prejudice in order to exclude the evidence. *Id*. If the evidence passes muster under *Merriweather* and Rule 403, the district court must clearly instruct the jury as to the specific purpose for which the evidence is offered. *Id*.

We review the district court's decision to admit evidence of "other crimes, wrongs, or acts" under Rule 404(b) using a tripartite standard. First, we review for clear error the district court's factual determination that the acts really occurred. *Merriweather*, 78 F.3d at 1074. In this case, Murray's profligate spending is uncontroverted. Second, we review *de novo* the district court's determination that the evidence was admissible for a legitimate purpose. *Id*. We agree with the district court that Murray's insatiable appetite for spending is relevant to his motive for defrauding the bank. Finally, we review for abuse of discretion the district court's decision that the probative value of the evidence was not substantially outweighed by its prejudicial effect. *Id*. When weighing probative value against prejudice, we take "a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect . . . ." *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997).

In *United States v. Jackson-Randolph*, which dealt with fraud, embezzlement and money laundering, we applied a three-part test to determine whether the probative value of lavish lifestyle evidence outweighed unfair prejudice. 282 F.3d 369 (6th Cir. 2002). We concluded that such evidence is admissible when (1) there is credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending related to the period of the alleged illegal activity. *Id*. at 378. All three factors are satisfied in this case. The record contains ample evidence

5

that Murray committed bank fraud and that he had no other source of income. In addition, his extravagant spending and his criminal activities occurred during the same period of time. Furthermore, the district court properly instructed the jury to limit its consideration of the testimony. The district court's decision to admit evidence of Murray's lifestyle for the purpose of showing motive and intent was not an abuse of discretion.

**III.    Testimony on matters of common knowledge is not opinion testimony.**

Murray argues that the testimony of an FBI agent about the definitions of "straw loan" and "check kiting" was impermissible under Rules 701 and 702 of the Federal Rules of Evidence.

Rule 701 of the Federal Rules of Evidence states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

The agent's testimony clearly satisfies the first and second factors of Rule 701. The agent gained knowledge of the terms "straw loan" and "check kiting" in the course of his work, and his explanations were "helpful to a clear understanding of the witness' testimony . . . ." FED. R. EVID. 701. The relevant question, then, is whether the agent's testimony was based on scientific, technical or other specialized knowledge within the scope of Rule 702. Since "straw loan" and "check kiting" are both terms used in common parlance, we find that their use is not specialized for purposes of Rule 701. Furthermore, any error that may have resulted from the district court's admission of the agent's definitions was harmless. The agent testified extensively to the details of Murray's fraudulent transactions, and his testimony was largely uncontroverted. The evidence that Murray

defrauded the Salyersville National Bank was overwhelming. As a result, Murray could not have been prejudiced by the definitions of "straw loan" and "check kiting" offered by the agent.

**IV.     The district court's sentence does not violate Murray's Sixth Amendment rights.**

Murray's final argument is that his case should be remanded for resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005), because the district court relied on facts not proven to a jury when formulating his sentence. Murray's argument fails. The district court in this case did not treat the United States Sentencing Guidelines as mandatory but instead imposed one sentence as though the Guidelines were mandatory and a second sentence as though they were not. "[W]hen a district court imposes alternative, identical sentences, one under a regime in which Guideline enhancements are not mandatory, the harmlessness of any *Booker* error is established." *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005). We therefore review Murray's sentence for reasonableness. *Id.* at 594. A sentence is reasonable if the court considered the factors enumerated in 18 U.S.C. § 3553. *Id.* In this case, the district court explicitly stated that it had considered the relevant factors. The court also requested Murray's counsel to articulate additional considerations, if any. We hold that thirty-six months' imprisonment was a reasonable punishment for Murray's crimes.

## Conclusion

For the foregoing reasons we **affirm** both the conviction and sentence.

7