**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0479n.06

**No. 13-5365**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 03, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| ONOFRE GIL CARRANZA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges, and RESTANI, Judge.[*]

BOGGS, Circuit Judge. Onofre Gil Carranza was convicted by a jury of 1) knowingly making a false claim of United States citizenship with the intent to engage unlawfully in employment in the United States, in violation of 18 U.S.C. § 1015(e), and 2) falsely and willfully representing himself to be a citizen of the United States, in violation of 18 U.S.C. § 911. He was sentenced to time served. Carranza raises two claims on appeal. First, he argues that the district court abused its discretion in permitting the introduction into evidence of a written Form I-9 indicating that Carranza had lied about his citizenship while seeking employment in the past. Second, he argues that the evidence at trial was insufficient to support the jury's verdict because it did not show that he knowingly or willfully represented himself to be a United States citizen. We affirm.

---

[*] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

# I

Carranza was brought to the United States by his parents when he was six years old. He grew up in this country, although he was not authorized to be here. In 2004, when he was around eighteen years old, he petitioned to have his "status changed," presumably to that of a citizen or lawful permanent resident of the United States. Although his application was denied, the decision denying it was withdrawn on appeal, and his application was still pending at the time of this trial, around eight years later.

On October 29, 2011, Carranza applied for a job at Advanced Auto Parts in Georgetown, Kentucky. The application process required him to fill out an Employment Eligibility Verification Form I-9 on a computer, which he did. That form includes a "Citizenship and Employment Verification" section, which states, "I attest, under penalty of perjury, that I am: _____," and prompts the applicant to select from among four options: 1) a citizen of the United States, 2) a non-citizen national of the United States, 3) a lawful Permanent Resident, or 4) an alien authorized to work. Each option has a button next to it allowing the user to select that option. Testimony at trial indicated that the first option, for United States citizenship, was initially selected by default, but that the user had the ability to select one of the other options instead. Below the verification section is an "Accept" button, next to which the following statement appears: "I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form." On the completed form that Carranza submitted, the button next to the first option was selected, indicating that Carranza was a United States citizen.

Earlier in 2011, Carranaza had filled out a printed Form I-9 by hand when he applied for a job at Custom Staffing in Chicago. That form included an "Employment Information and

Verification" section virtually identical to that on the digital Form I-9 described above, except that no option was selected by default. The checkbox next to the first option was marked, indicating that Carranza was a United States citizen, and next to it was an admonition about the penalties for making false statements, identical to that on the digital form. Below the admonition was a line, underneath which appear the words "Employee's Signature," followed by additional space and another line. Carranza's alleged signature appeared above both the first and second lines, with a line struck through the top signature but not the one below it.

On August 16, 2012, police stopped Carranza for a traffic violation and arrested him after he admitted that he was not a United States citizen and had no documentation proving that he was authorized to be in the United States. This prosecution followed.

## II

The district court allowed the government to introduce the written Form I-9 at trial pursuant to Federal Rule of Evidence 404(b). Under Rule 404(b), evidence of a defendant's prior bad acts may not be admitted to prove his character and to infer therefrom that he likely acted consistent with that character on another occasion. Nevertheless, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For the evidence to be admitted, the district court must find 1) that the prior bad act occurred, 2) that the evidence would serve one of the legitimate purposes identified in Rule 404(b)(2), and 3) that the probative value of the evidence was not substantially outweighed by its prejudicial effect. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). The court found that Carranza had in fact completed and signed the written Form I-9. It further found "that the handwritten I-9 is probative to show knowledge of the I-9 form and the requirement to verify under penalty of

perjury the applicant's status . . . .  It is also probative on the issues of intent, absence of mistake, or lack of accident."  Finally, the court determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the defendant.

"In reviewing a district court's decision to admit evidence of other crimes, wrongs, or acts under Rule 404(b), we first review for clear error the district court's factual determination that the other acts occurred."  *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996) (internal quotation and alteration marks omitted).  "Second, we examine de novo the district court's legal determination that the evidence was admissible for a legitimate purpose."  *Id.* (italics omitted).  "Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect."  *Id.*

The district court concluded that Carranza had completed and signed the written Form I-9 by comparing the signature on Carranza's Social Security card with that on the top line of the Form I-9 and finding that the two were "the same."  The court also noted that Carranza's application was accompanied by a copy of his Social Security card and his Illinois photo ID.

The district court's factual determination was not clearly erroneous.  The first signature on the form and that on Carranza's Social Security card appear to match, and the Form I-9 was accompanied by other documentation supporting the inference that the signature was Carranza's.  Although the top signature was crossed out, it was perfectly legible.  On appeal, Carranza cites the testimony of Idania Stack, owner of Custom Staffing, that, to her eye, the bottom signature looked different from the top one.  *See* Appellant's Br. at 11; Appellee's Br. at 7–8.  It is certainly plausible that Carranza, realizing that the appropriate place for his signature was below the first line and not above it, crossed out the signature above and signed again below.

4

Regardless, even if the bottom signature were not Carranza's, there is no basis in the record for disputing the authenticity of the top signature, which Stack testified would have been sufficient for his application to have been accepted. Carranza offers no explanation for how his signature might have ended up on the Form I-9 accompanying his job application (including a copy of his Social Security card and photo ID) without his authorization, whether his true signature appeared once or twice. The district court did not clearly err in finding that Carranza had completed and signed the written Form I-9.

The second step in reviewing the admission of Rule 404(b) evidence is to determine whether the evidence was admissible for a legitimate purpose. The district court correctly found that the written Form I-9 was probative of Carranza's "knowledge of," or familiarity with, the form and its inquiry with respect to the applicant's citizenship. It also correctly determined that the form was properly admissible to show Carranza's "intent" to affirmatively indicate citizenship on the form, and the fact that his having done so was neither an accident nor a mistake. "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue." *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002) (internal quotation marks omitted). As the district court found, here, the two acts in question are virtually identical, as both "involve the making of a false claim of United States citizenship on an I-9 form during the process of applying for employment." They are also near in time, as the first occurred on May 27, 2011, and the one charged in the indictment occurred on October 29, 2011, five months later. Carranza argues that "it seems erroneous to hold that actively checking a box on a written form that states a person is claiming to be a U.S. citizen is probative a [*sic*] becoming a U.S. citizen via a computer program that defaults to and auto populates [*sic*] U.S.

5

citizen if one does nothing." Appellant's Br. at 10. His point is not well taken. Although a written form is written and a digital one is digital, that difference is not enough to render the two acts in question substantively dissimilar, despite the caveat that only the digital form had a default option. "Probative" does not mean dispositive; it means "tending to prove or disprove." BLACK'S LAW DICTIONARY 1240 (8th ed. 2004). The question here is whether the option for United States citizenship on the digital form was selected intentionally or left that way by accident. We have held that, "where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)." *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994). As an example, "[t]his court has repeatedly recognized that prior drug-distribution evidence is admissible under Rule 404(b) to show intent to distribute." *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) (internal quotation and alteration marks omitted). All else equal, the fact that Carranza had affirmatively indicated that he was a citizen in the recent past makes it more likely that his selection on the digital form was intentional.

Finally, we review for abuse of discretion the district court's determination that the probative value of the evidence was not substantially outweighed by its unfairly prejudicial effect. Carranza argues that he was "severely prejudiced" because "without this evidence a verdict of guilty would have been extremely unlikely." Appellant's Br. at 12. But Carranza misunderstands the kind of prejudice at issue here. There can be little doubt that the admission of the written Form I-9 into evidence was highly influential to the jury's finding of guilt. But the question is not whether the evidence would be held against Carranza; it is whether it would be held against him *unfairly* by "lur[ing] the factfinder into declaring guilt on a ground different

6

from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Although a prior act may not be used to prove a defendant's character and that he acted in conformity therewith, it may be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The line between these two categories is often difficult to draw. For example, saying, "Carranza lied about his citizenship in the past so he probably intended to lie here," would appear to violate the prohibition against using prior bad acts as character evidence, yet at the same time qualify for the exception to prove intent and lack of accident or mistake. It is perhaps more accurate to say that evidence of intent based on a prior bad act is admissible *despite* the fact that it may also speak to a defendant's character, provided its probative value is not substantially outweighed by its prejudicial effect.

The probative value of the written Form I-9 was great. In completing that form, Carranza committed an act that was close in time and nearly identical to the offense with which he was charged. The written form also played a significant role in the government's case. One factor we consider in balancing probative value against prejudice is the availability of other proof. *Hardy*, 643 F.3d at 153. Here, Carranza's intent was in issue, and no other proof of intent was available aside from whatever the jury might glean from the fact that the digital form was submitted as it was. We also consider limiting instructions to the jury, and here, the district court instructed the jury not to consider the prior act for anything other than knowledge, intent, and absence of accident or mistake. *See id*. To be sure, the admission of the form was also prejudicial: "When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *Johnson*, 27 F.3d at 1193. But the prejudicial effect—and, in

particular, the *unfairly* prejudicial effect—of admitting the written Form I-9 did not substantially outweigh its probative value. Just as prior convictions for possession with intent to distribute are generally admissible to show such intent in a subsequent case, Carranza's prior false statement about his citizenship in connection with seeking employment was admissible to show his intent to make a false statement here. We hold that the district court did not abuse its discretion in determining that the prejudicial impact of the evidence did not substantially outweigh its probative value.

### III

Carranza's second claim is that the evidence at trial was insufficient to support the judgment against him because the government failed to prove that he "intentionally and falsely claimed to be a U.S. citizen." Appellant's Br. at 17.

To determine whether the evidence was sufficient, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Circumstantial evidence alone can meet this burden." *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2041 (2013). "All reasonable inferences and resolutions of credibility are made in the jury's favor." *Id*.

Carranza points to numerous pieces of evidence at trial that were favorable to him, including testimony that the form defaulted to the option for a United States citizen, that individuals sometimes do not read the entire form before clicking "Accept," that no one watched Carranza complete the form, and that Carranza admitted to the law-enforcement officers who stopped him for the traffic violation that he was not a United States citizen. But the question is

8

not whether the jury could have found in favor of the defendant; rather, it is whether no rational juror could not have done so. There was ample evidence to support the jury's verdict, including the fact that the digital form that Carranza submitted had the option for United States citizen selected, that a clear statement next to the "Accept" button warned him about the penalties for making false statements on the form, and that he had intentionally declared his citizenship on a Form I-9 while seeking employment five months earlier. The jury was free to credit Carranza's counsel's argument that Carranza did not realize that the option for a United States citizen had been selected on the digital form, but apparently it chose not to do so. That is the jury's prerogative. Drawing all inferences and credibility determinations in favor of the jury's verdict, we hold that the evidence was sufficient to support a finding of guilt.

**IV**

The judgment of the district court is AFFIRMED.