**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Antoine Andre MILLER, Defendant–Appellant.**

**No. 96–1025.**

United States Court of Appeals, Sixth Circuit.

Decided April 15, 1997. *

---

* This decision was originally issued as an "unpublished decision" filed on April 15, 1997. On May 5, 1997, the court designated the opinion as one recommended for full-text publication.

Before: MERRITT, KRUPANSKY, and BOGGS, Circuit Judges.

KRUPANSKY, Circuit Judge.

The defendant-appellant, Antoine Andre Miller ("Miller"), has contested his jury conviction under 18 U.S.C. § 871(a)[1] for mailing a threatening message to the President and the Vice President of the United States from

---

1. 18 U.S.C. § 871(a) commands:

Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States, the President-elect, the Vice President or other officer next in order of succession to the office of President of the United States, or the Vice President-elect, or knowingly and willfully otherwise makes any such threat against the President, President-elect, Vice President or other officer next in the order of succession to the office of President, or Vice President-elect, shall be fined under this title or imprisoned not more than five years, or both.

a Michigan state penitentiary. He contends that the subject communication did not comprise a believable "true threat," that the district court unjustifiably excluded evidence germane to his defense that he had not written the letter but rather prison guards had forged the document, and that a second threatening missive that he had penned had been improperly admitted into evidence.

On December 13, 1993, a handwritten envelope marked "confidential" and addressed to "President Bill Clinton, The White House, Washington, D.C. 20005," which carried the return address of Antoine Andre Miller, prisoner # 202901, State Prison of Southern Michigan (located in Jackson, Michigan), was postmarked at Lansing, Michigan. The inmate mail from the Jackson facility is routed through Lansing. The enclosed handwritten letter dated December 12, 1993, inscribed on prisoner stationary, similarly reflected authorship by Antoine Andre Miller, prisoner # 202901, Southern Michigan Prison. That missive recited:

Bill,

You fucked up!

I told you not to cross me, but you did anyway! Now, you will have to pay! You, your wife, your daughter, Al and Tipper too!

I will have all of you killed! When? You'll never know! Where? You'll never know! Why? Only me and you know Bill.

I thought that my having the Trade Center bombed, would let you know to "never" cross me and to leave my people alone. But, I see that it didn't. So, I had to have the shooting spree on the subway committed, but I see that you still haven't learned your lesson yet. Therefore, you, Hillary, Chelsa [sic], Al, and Tipper *"Must"* Die! There ain't-no-doubt-in-my-mind that I can have you all killed at will, and you can't prove shit because I'm already locked up. This letter don't mean shit!!

Signed:

You know who!

■ Miller asserts that the trial court should have granted his motion for acquittal because the prosecution's evidence could not, as a matter of law, prove a "true threat" to kill or injure the President or Vice President under the strictures of *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam). In *Watts,* the Supreme Court instructed that only a contextually *credible* threat to kill, injure, or kidnap the President (or one of his successors listed in 18 U.S.C. § 871) constitutes a criminalized "true threat." By contrast, communications which convey mere political hyperbole, innocuous talk, jest, or the like, are beyond the scope of the statute and further are insulated by the First Amendment. *Id.* at 707–08. Miller claims that a rational person would not believe that the subject communication published a "true threat" to kill or injure the President or the Vice President because he was incarcerated in a penal institution at the pertinent time and because the letter's content evinced a delusional originator.

■ However, the author's imprisonment does not automatically transmute a facially threatening letter into an innocuous prank. *United States v. Glover,* 846 F.2d 339, 344 (6th Cir.), *cert. denied,* 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 565 (1988). *Accord, United States v. Lincoln,* 589 F.2d 379, 381 (8th Cir.1979) (per curiam). Manifestly, an incarcerated individual who may be associated with a radical political organization, a lunatic fringe element, or any other criminally inclined gang or other affiliation may pose a significant risk of igniting or inspiring criminal activity outside the institution. Indeed, a prosecutable threatening communication need not be supported either by evidence of the author's actual ability to carry out his threat, or his actual subjective intent to do so. Rather, if a reasonable person would foresee that an objective rational recipient of the statement would interpret its language to constitute a serious expression of intent to harm, kidnap, or kill the President or other statutorily protected target, that message conveys a "true threat." *United States v. Smith,* 928 F.2d 740, 741 (6th Cir.), *cert. denied,* 502 U.S. 852, 112 S.Ct. 159, 116 L.Ed.2d 124 (1991); *Glover,* 846 F.2d at 344; *United States v. Lincoln,* 462 F.2d 1368, 1369–70 (6th Cir.) (per curiam), *cert. denied,* 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224

(1972). *See generally United States v. Kosma*, 951 F.2d 549, 554–55 (3rd Cir.1991).

A reasonable person would foresee that the letter in controversy would be construed, and investigated, by the authorities as a potentially serious threat against the lives or safety of the President and Vice President. The writing menacingly suggested its author's motives for inflicting injury upon the President and the Vice President, pointedly asserted that his claimed associates outside the prison would carry out the threatened assassinations, and confidently proclaimed his perceived immunity from prosecution by virtue of his incarceration alibi. The manifest instability and irrationality of the perpetrator of these menaces did not objectively diminish the letter's credibility but instead predictably heightened apprehension by its recipients that the author could be sufficiently imbalanced to seek the realization of his proclamations. The lower court correctly rejected Miller's motions for acquittal and properly submitted the "true threat" issue to the jury. *Glover*, 846 F.2d at 344. *See generally United States v. Walton*, 908 F.2d 1289, 1294 (6th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229, *and cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541, *and cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990); *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir.1990).

Although the uncontradicted expert testimony proved that the instant menacing communication had been transcribed in Miller's handwriting, and the letter disclosed a partial latent print of the defendant's left index finger, Miller nonetheless denied that he drafted the document. Rather, he averred that prison guards framed him by forging the subject letter on prisoner stationary taken from Miller's prison cell, in retaliation for the

defendant's civil lawsuits against them. In support of this defense, the defendant argued that he could not have successfully posted the instant letter from within the institution because prison officials screened his non-legal correspondence prior to mailing and consequently would have intercepted a communication of this type. Miller charged that the trial court curtailed the presentation of his defense by instructing defense counsel that the scope of the defendant's testimony regarding his allegations of violent or other wrongful conduct against him by penal guards would be restricted. The appellant contends that the trial court thus unjustifiably restrained his ability to corroborate his assertion that the guards possessed a motive and inclination to exact vengeance against him.

However, a thorough review of the record has disclosed that the district court did not unduly limit Miller's presentation of testimony pertinent to his proffered defense. The trial court permitted the accused wide latitude to promote his unsupported defense. Miller speculated from the witness stand that the prison guards framed him by forging the letter in controversy on prisoner stationary stolen from his cell because of his civil lawsuits against the guards, and that he supposedly could not have sent the letter because prison employees reviewed his mail prior to posting.[2] He related the background of a particular civil suit, which he contended incited the guard's malice against him, and attested to specific confrontations with prison security officers. Defense counsel fully argued the forgery and frame-up theory in closing.

If Miller had desired to proffer any additional specific testimony in support of his defense, he should have made an appropriate offer of proof at trial under Fed.R.Evid. 103(a)(2).[3] His failure to carry his burden of

---

**2.** The latter contention was belied by evidence that Miller had successfully mailed another threatening letter to a federal government official from a state house of corrections (situated in Baraga, Michigan), as developed below. It is not surprising that these letters escaped the screening of prisoner mail. Correctional security personnel did not review inmates' "legal mail," which might be broadly construed by institutional staff to include letters addressed to federal government officials, as such correspondence

might concern legal inquiries or requests for pardons or other potential legal relief. Whereas prison employees inspect residents' mail for contraband, escape plots, planning of criminal activity with outside confederates, and the like, no purpose compels the screening of mail between a convict and a high-ranking government official.

**3.** Fed.R.Evid. 103 states, in pertinent portion:

stating the nature and purpose of any additional evidence which he would have offered in the absence of the lower court's evidentiary ruling waived his claim that the district court erroneously excluded evidence relevant to his defense. *United States v. Luce,* 713 F.2d 1236, 1241 (6th Cir.1983), *aff'd,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). *Accord, United States v. Bonneau,* 970 F.2d 929, 933 (1st Cir.1992). In any event, even if Miller had made a valid evidentiary proffer, the trial court's ruling under Fed.R.Evid. 403 did not constitute an abuse of the trial judge's very broad discretion to exclude evidence which is irrelevant, misleading, confusing, a waste of time, or potentially prejudicial.[4] *Vincent,* 681 F.2d at 465. The trial court implicitly concluded, correctly, that Miller improperly sought to garner the jurors' sympathy for himself, and inflame them against the authorities, through the introduction of distracting and immaterial collateral allegations against the prison guards. Moreover, even if the trial court had excluded additional relevant defense evidence which was more probative than prejudicial, no reversible error would have resulted because, on the overall instant record, no reasonable doubt exists about Miller's guilt. *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976); *see also* Fed.R.Evid. 103(a).

Finally, Miller maintains that the district court, over objection, prejudicially erred by admitting, as Fed.R.Evid. 404(b) "identification" evidence[5] in the government's rebuttal case, another duly authenticated letter containing a death threat which Miller had written and sent from a state prison (situated in

Baraga, Michigan) to a United States Magistrate Judge ("the magistrate letter").[6] The appellant argues that the district court, in admitting this proof, failed to adhere to the procedure dictated by *United States v. Merriweather,* 78 F.3d 1070, 1076–77 (6th Cir. 1996):

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is "in issue" often depends on the defendant's theory and the proofs as they develop. Nevertheless, the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule

---

**(a) Effect of an erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

**(2) Offer of proof.** In case the ruling is one *excluding* evidence, the *substance* of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

4. An "abuse of discretion" occurs only where the trial court relied on clearly erroneous findings of fact, or applied erroneous law or an improper legal standard. *United States v. Hart,* 70 F.3d 854, 859 (6th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996).

5. Fed.R.Evid. 404(b) states in relevant portion:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

6. The text of that communication read:

> Bitch. You fucked up and now you must die. I'm going to kill myself but before I do I'm going to kill you!
> Signed:
> You know who!

403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the *specific* purpose for which they may consider the evidence.

*Id.* at 1076–77. (Emphases in original; citation omitted).

◼ The appellant has alleged technical departures by the district court from the procedure outlined in *Merriweather;* namely, the district court admitted evidence of "other acts" (the magistrate letter) *prior* to stating on the record its finding that the probative value of this evidence outweighed its potential prejudicial effect,[7] and it neglected to instruct the jurors on the limited purpose of the "identification" evidence immediately following its admission, but instead incorporated that instruction with the other jury instructions at the conclusion of all the evidence.[8] However, the defendant has not contested the sufficiency of the lower court's findings or of its limiting jury charge. Miller suffered no substantial prejudice, even if the trial court had failed to conform to the precise letter of the *Merriweather* procedure. *Merriweather* merely outlined a general approach, which the lower court in the case *sub judice* substantially followed, designed to ensure that evidence admitted under Rule 404(b) is indeed admitted for a proper Rule 404(b) purpose, that the lower court makes an appropriate finding that the probative value of the evidence predominates over its potential prejudicial effect,[9] and that the jury is appropriately instructed prior to deliberations that the Rule 404(b) evidence may be considered only for specific and limited purposes. *Merriweather* did not impose strict, inflexible temporal or sequential mandates upon the district courts. Viewing the record in its entirety, the trial court, subsequent to its probative value versus potential prejudice evaluation, admitted the magistrate letter for a proper Rule 404(b) purpose (to prove the identity of the author of the letter to President Clinton). Prior to the jury's deliberations, the trial court correctly instructed it regarding the limited purpose for which the previous threatening letter written by the defendant to a magistrate judge was admitted into evidence. The lower court's procedure adequately satisfied Fed.R.Evid. 404(b) and the pronouncements of *Merriweather.*

Accordingly, Miller's instant conviction is **AFFIRMED.**

---

7. After admitting the evidence in controversy, the trial judge stated:

> I think too that I should put on the record at this time that I find that the probative value of Exhibit 4 outweighs its prejudicial impact that I had not ruled on when the jury was out.

8. After the close of the evidence, the lower court instructed the jurors:

> Now, you have heard testimony also that the defendant committed another act: that is, the writing of the letter to Magistrate Judge Martin—Morgan. Excuse me. Now, you cannot consider that testimony as evidence that the defendant committed the crime that he is on trial for now. Let me explain to you why that particular exhibit was admitted.
>
> In this case, the defendant denied that he had written or sent the letter, Exhibits 1A and 1B [the letter to the President and its associated envelope], to the President and the Vice President. His denial raised the question of identity: who did write the letter. Because the identity of the writer became a question, I admitted Exhibit 4, the letter to Magistrate Judge Morgan, for you to consider the question of identity and for no other purpose.
>
> Remember that the defendant is on trial here only for mailing a threatening communication to the President and the Vice President, not for any other acts. Do not return a guilty verdict unless the government proves the crime charged beyond a reasonable doubt.

9. *Merriweather* did not mandate that error inheres where the district court merely failed to make a *record* of its determination that the Rule 404(b) evidence's probative value outweighs its prejudicial effect until after admission of that evidence. An appellate court will presume that the balancing process and decision preceded the ruling allowing admission of the evidence. *United States v. Blankenship,* 954 F.2d 1224, 1229 (6th Cir.), *cert. denied,* 506 U.S. 901, 113 S.Ct. 288, 121 L.Ed.2d 213 (1992).