UNITED STATES of America, Plaintiff–Appellee,

v.

Sheila WOMBOLD, Defendant–Appellant.

No. 01–2507.

United States Court of Appeals, Sixth Circuit.

Aug. 7, 2002.

BEFORE: GUY and BATCHELDER, Circuit Judges; COHN, District Judge.*

BATCHELDER, Circuit Judge.

Defendant Sheila Wombold appeals her conviction on a single count of conspiring to transport in interstate commerce $5,000 or more, knowing that it had been obtained by fraud, in violation 18 U.S.C. § 2314. Wombold argues that the district court erred by permitting the Government to cross-examine her in violation of Federal Rule of Evidence 404(b) and by failing to give the jury a limiting instruction concerning that cross-examination. Finding no reversible error, we will affirm the judgment of conviction.

* The Honorable Avern Cohn, United States District Judge, Eastern District of Michigan, sitting by designation.

## I.

Wombold, her brother Hansford Graham, Jr., and David Garcia were part of a conspiracy to defraud Meijer stores, a regional retail department store chain by which Wombold had been employed for some ten years. At the time of the conspiracy, Wombold was a department manager in a Meijer store in Ohio. The scheme—called "refunding"—involved obtaining Meijer merchandise by fraud and returning it for full cash refunds using falsified sales receipts. During a three-week period, the defendants perpetrated this fraud on Meijer stores in Ohio, Indiana and Michigan, obtaining fraudulent cash refunds in excess of $12,000.

Garcia and Graham were arrested in Coldwater, Michigan, driving a rented Cadillac. Following their arrest the police searched their rented car. In it were found rolls of official Meijer receipt tape; numerous receipts and counterfeit receipts for merchandise; a fax/copier machine of the kind necessary to make counterfeit Meijer receipts; and a number of the special markers used by Meijer employees to test the authenticity of the store's receipts. The police also found in the car envelopes addressed to credit card companies with which Wombold had accounts; the envelopes contained notes with Wombold's account numbers on them.

After his arrest, Graham called Wombold from jail. In their telephone conversation, which the telephone operator told them at the outset was recorded, they discussed how to prevent Garcia from talking: "[W]e got to get David [Garcia] out too. Dave's got a big mouth." Wombold repeatedly bemoaned the fact that she had rented a car for Graham and stated "that's car is gonna get me in a lot of trouble." And Wombold repeatedly stated that she was looking for "receipts" from her "vacation fund" and her "money market fund" to prove that she had given Graham and Garcia money. At no time in the conversation did Wombold inquire why Graham was in jail.

A grand jury for the Western District of Michigan returned a one-count indictment against Wombold, Graham, and Garcia, charging them with conspiring to transport more than $5,000 in interstate commerce knowing the money to have been taken by fraud, in violation of 18 U.S.C. § 2314. Garcia and Graham pleaded guilty; Wombold went to trial and was convicted by a jury. The district court sentenced Wombold to thirteen months' incarceration.

Garcia testified at Wombold's trial that Wombold had rented a car for them to drive from Ohio to Michigan for the purpose of defrauding Meijer stores. According to Garcia, Wombold had participated in the conspiracy by, among other things, explaining to Graham how the Meijer security procedures worked and giving them official Meijer receipt paper, special markers used by Meijer store personnel to test the authenticity of receipts, and some of her credit cards to use on the trip to Michigan. Garcia testified that the envelopes addressed to credit card companies were to be used to dispose of some of the cash he and Graham had obtained through the return/refund scheme in order to avoid the suspicion they might engender from having large amounts of cash.

Elizabeth Graham, Graham's estranged wife, testified that Wombold had provided Graham with UPC stickers and Meijer receipt tape for Meijer merchandise. According to Elizabeth, Wombold would place receipt tape in a porcelain duck at Wombold's mother's residence where Graham would pick it up. Greta Hill, Wombold's and Graham's sister, testified that she was regularly at her mother's home and that there was a porcelain duck in her mother's kitchen.

Wombold testified in her own defense and denied any involvement in or knowledge of the conspiracy. She admitted that in her conversation with Graham while he was in jail she lied about having given Graham the money he was arrested with because she wanted to help him by giving him an alibi as to how he came to have so much cash on his person when he was arrested, admitted that she was willing to lie for her brother, and denied not only that she had ever placed anything in a porcelain duck at her mother's home but that there was any such duck.

The sole issue in this appeal revolves around one small segment of the Government's cross-examination of Wombold:

Q Lastly, Ms. Wombold ... isn't it true that you helped Junior [Graham] to buy a rug at Meijer's at a reduced price, maybe five dollars?

A No.

Q In fact, weren't you called by somebody up at the front, maybe it was customer service, maybe even loss prevention, who called you up and asked, How is it that this rug is only five dollars?

A I don't recall that.

Q And didn't they ask you or didn't you tell them at the time, oh, it's because it was a display item or some reason for the fact that this item was reduced in price?

A No one called me to the front.

Q Well, did they call you on the phone and ask for some sort of explanation why the price was reduced on this rug?

A They may have.

Q So there was that sort of conversation, then, about why a rug was reduced, the price was reduced on a rug?

A There may have been.

. . .

Q Did they ask you any questions about the fact that this was your brother?

A Yes.

Q Wasn't there a policy against you pricing something for your brother?

A I did not mark anything down.

. . .

Q Did they discuss the fact that they thought that or they were concerned about who was buying the rug?

A Yes.

Wombold's counsel made no objection to the subject matter of this cross-examination.

After the jury was instructed, however, Wombold's counsel objected to the district court's not having given an "other acts" instruction concerning the rug incident. The district judge discussed the issue with the attorneys, explaining that in his view, the exchange between Wombold and the prosecutor about the rug was not "other acts" evidence; Wombold denied having marked down the rug, and the Government presented no evidence that she had done so, and pursued the matter no further. The district judge expressed his belief that an instruction calling this piece of cross-examination to the jury's attention would result in more prejudice than good to Wombold, but the court agreed to give a limiting instruction if Wombold's attorney thought it prudent. After further discussion, Wombold's attorney let the matter drop and lodged no further objections.

Wombold asserts on appeal that the cross-examination on the rug incident—inferring that she had helped her brother purchase a greatly discounted rug at Meijer's—was designed to show that her alleged participation in the conspiracy at hand was in conformity with her prior conduct, a use of evidence prohibited by Federal Rule of Evidence 404(b).

## II.

Because Wombold failed to object to the cross-examination about the rug incident,

we review for plain error. *United States v. Reed,* 167 F.3d 984, 988–89 (6th Cir. 1999). To reverse for plain error the reviewing court must find: (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of the judiciary. *United States v. Page,* 232 F.3d 536, 544 (6th Cir.2000). "The plain error doctrine is to be used 'only in exceptional circumstances' and only where the error is so plain that the trial judge was 'derelict in countenancing it.'" *United States v. Cowart,* 90 F.3d 154, 157 (6th Cir.1996).

Rule 404(b) limits the ability of a party to introduce character evidence to show action in conformity therewith and states:

Other Crimes, Wrongs, or Acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b). The usual procedure for admission of Rule 404(b) evidence involves four steps: (1) the party seeking its introduction must disclose the purposes for which the challenged evidence is being introduced; (2) the district court must determine whether the purpose is material or in issue; (3) the court must then determine, before admission of the evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice; and (4) the district court must instruct the jury concerning the specific purposes for which they may use the

evidence. *United States v. Merriweather,* 78 F.3d 1070, 1076–77 (6th Cir.1996). *Merriweather* "merely outlined a general approach" to Rule 404(b) evidence and "did not impose strict, inflexible temporal or sequential mandates." *United States v. Miller,* 115 F.3d 361, 366 (6th Cir.1997). We hold that in this case, neither the district court's failure to follow the precise procedures nor the cross-examination itself constitute plain error.

■ The cross-examination of Wombold concerning the rug incident was permissible to attempt to show Wombold's knowledge of Graham's scheme of refunding, an issue that was clearly contested and material to her conviction. Wombold's strategy at trial was to claim that she did not know of Graham and Garcia's plan to refund at numerous Meijer stores and that the assistance she provided them for their trip was purely altruistic. The Government attempted to show at trial that Wombold either knew of the refunding scheme or was willfully ignorant of it. Evidence that Wombold had helped Graham purchase an improperly discounted rug would have been highly probative of her knowledge or willful ignorance, and its probative value would have outweighed any unfair prejudice. This cross-examination, of course, did not yield that evidence, but instead elicited a denial of any knowledge or involvement with Graham's purchase of a discounted rug.

The defendant in the similar case of *United States v. Reese,* 568 F.2d 1246, 1249–50 (6th Cir.1977), testified on direct that he did not know that the plywood he was charged with transporting in interstate commerce was stolen. The government, during its cross-examination, asked the defendant about alleged previous instances where he had purchased stolen property. *Id.* at 1249. We ruled that the cross-examination was proper under Rule

404(b) to show motive, intent, and knowledge. *Id.* In a similar fashion, the Government's cross-examination below was proper to test Wombold's claim that she did not have knowledge of Graham's refunding scheme.

■ Whether the district court erred in failing to give a limiting instruction regarding this cross-examination raises a somewhat more difficult question. We have held that after other acts testimony is admitted the "jury *must* be 'clearly, simply, and correctly instructed concerning the narrow and limited purpose for which the evidence may be considered.'" *United States v. Jobson,* 102 F.3d 214, 222 (6th Cir.1996) (quoting *United States v. Johnson,* 27 F.3d 1186, 1193 (6th Cir.1994)) (emphasis added). The court's instruction must specifically include the reason for which the jury may utilize the other acts evidence. *Id. See also Merriweather,* 78 F.3d at 1077 (stating as mandatory the limiting instruction requirement). *But see Johnson,* 27 F.3d at 1193 (stating the limiting instruction requirement in permissive terms).

Our later cases have not construed the *Merriweather* jury instruction requirement as mandatory. *See Miller,* 115 F.3d at 366 (rejecting the defendant's argument that the district court committed reversible error because it violated *Merriweather* and did not give a contemporaneous instruction). Further, *Merriweather* and *Jobson* are easily distinguishable from the case at hand. In those cases, not only were contemporaneous objections properly raised to the introduction of the challenged evidence, the evidence itself clearly was Rule 404(b) evidence. Here, Wombold's attorney made no contemporaneous objection to the cross-examination; whether that evidence was in fact Rule 404(b) evidence is

not at all clear; and Wombold's counsel, after raising an objection to the court's failure to give a Rule 404(b) instruction, decided against pursuing the objection.

When reviewing for plain error, we "view the trial record as a whole to determine if the error seriously affected the fairness of the trial." *United States v. Patterson,* 20 F.3d 809, 815 (10th Cir. 1994). Wombold has failed to demonstrate that any error with regard to the alleged Rule 404(b) evidence seriously affected the fairness of her trial. The evidence of Wombold's complicity in this conspiracy was abundant, and we find that there is no basis for believing that the cross-examination about the discounted rug might have influenced the jury's verdict.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.