**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roger Allen ANDREWS, Defendant–
Appellant.**

No. 00–6412.

United States Court of Appeals,
Sixth Circuit.

Oct. 2, 2002.

Before SILER, COLE, and CLAY, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Defendant Roger Andrews appeals his conviction and sentence for threatening a federal official and the family of a federal official in violation of 18 U.S.C. § 115. Andrews argues that (1) there was insufficient evidence to support his conviction; and (2) the district court erred by failing to make specific findings regarding its denial of a reduction in sentence pursuant to U.S.S.G. § 2A6.1(b)(4). For the reasons discussed herein, we **AFFIRM** the judgment of the district court.

## BACKGROUND

### A. Factual Background

In January, 1998, Andrews began serving a sentence in the Texas Department of Corrections for delivery of a controlled substance. On April 24, 1998, United States Circuit Judge Gilbert Merritt received a letter addressed to him in his Nashville, Tennessee chamber from a "Mark Andrew." The letter reads as follows,

> Mr. Merritt, I am writing to you in concern of several things you have pulled and are pulling on the White Race. You have planned your next attack on the White Race for years now and its time for you to pay the price, you yellow belly Jew Loving Bastard. Are you aware of Robert Matthews coming back and is alive and well? Yes, he is, and so is Vicki Weaver, and that have come back to life through our Aryan race and now it's time for you and your people to pay for all the wrongs you have done to my people. Just like the Waco deal. Every one knows it was a setup, and all of you are involved, and *now* it's time for y'all to pay, and you will pay, with your life, and then your so precious family, and that comes from my Aryan heart. You Jew-loving punk. And let me guess, your wife doesn't know about your female friend who you seen a couple of weeks ago.
>
> It doesn't matter now because me and my people are coming for *you* and *your* family, and it's going to be a nice party for our Aryan people to watch and hear all of your deaths. It's time, Mr. Merritt. Your place is not secure enough for my people. Because we have your every move down and we, the Aryans of America, will stay true to our heritage. Because the day that Satan comes, all you Jew-ass loving punks, who kiss ass with the niggers, and are going to try to take over. And that will never come, Mr. Merritt, because you may be taken off count before you read this, and if not, then only in a few hours, and you will be dead. Just like the other Jew-lovers, and your heads will be served on a platter to the Governor during his daily

luncheon. And your family will be tormented a slowly death, and that is the Aryan truth. Because Matthew and Weaver says so. Weiss Stoltz; Werhmacht; Rahowa. Yours truly, Mr. Mark Andrew, Roberts Matthews, and Vickie Weaver.

Sara Pettit, Judge Merritt's administrative assistant, recognized the letter to be a death threat and contacted the U.S. Marshal's Service. Deputy John Hargis of the Marshal's Service took the letter and tracked the return address on the envelope, which read, "Mark Andrew, inmate no. 814104, P.O. Box 100, Huntsville, Texas." The number was assigned by the correction officials to the defendant, who is also known as Mark Andrew. Hargis then forwarded the letter to the Federal Bureau of Investigation (FBI). Special Agent Wilson of the Memphis FBI office submitted the letter to Valerie Betty, a fingerprint specialist. JA at 70. Betty concluded that the fingerprints on the letter matched those of Andrews.

On May 7, 1998, FBI Special Agent Stanley Burke visited the James B. Alred Prison Unit in Iowa Park, Texas to interview Andrews. Andrews agreed to meet with Burke and signed a waiver form acknowledging that he knowingly declined to be represented by counsel. In their interview, Andrews admitted to Burke that he had authored the letter. When asked why, Andrews replied that he was a member of the Aryan Brotherhood and did not like Judge Merritt for anti-Semitic reasons. Andrews also stated that he disliked Judge Merritt because he is a member of the federal government. Andrews added that Judge Merritt had made some judgments that adversely affected his relatives, though he refused to elaborate. Andrews told Burke that he could not promise that no harm would come to Judge Merritt.

On November 18, 1998, a federal grand jury indicted Andrews on one count of threatening to harm the family member of a federal judge on account of his performance of his official duties, in violation of 18 U.S.C. § 115(A) and one count of threatening to retaliate against a federal judge on account of the performance of his official duties in violation of 18 U.S.C. § 115(B).

On May 23 and 24, 2000, Andrews was tried before Judge Nixon in the U.S. District Court for the Middle District of Tennessee. At trial, the government introduced Pettit's testimony regarding the contents of the letter sent to Judge Merritt, Burke's testimony regarding the contents of his interview with Andrews, and Betty's fingerprint testimony. In addition, the government presented the testimony of Deputy Hargis and Special Agent Wilson regarding their investigation of Andrews, along with the testimony of Robert Gambrell, the mail room supervisor for the Texas Department of Corrections. Gambrell testified that he recorded the mailing of a letter in his log book that was sent by Andrews to a "Judge Merritt."

Andrews was the sole defense witness. He testified that he sent the threatening letter to Judge Merritt in the hope of effecting a prison transfer to Nashville. He stated that just prior to his incarceration on drug charges in January 1998, he tested positive for HIV. Andrews testified that because of his questionable health, he wanted to be close to his mother, who resides in Nashville and was apparently unable to visit him in Texas.

Andrews testified that while incarcerated he met a fellow inmate named Bobby Joe James. Andrews was aware of the fact that James had sent a threatening letter to a federal judge in Missouri and was being transferred to Missouri on a federal warrant. Andrews stated that he

approached James about helping him to obtain a similar transfer to Tennessee.[1] Andrews testified that he instructed James to write the letter to Judge Merritt, whose chamber is located in Nashville. Andrews stated that he did not know anything about Judge Merritt or his family—he said that he and James "picked" Judge Merritt solely because he is a federal judge in Nashville. Andrews testified that he lied to Special Agent Burke when he stated that he had a personal vendetta against Judge Merritt and could not promise that no harm would come to him or his family. Andrews added that he fabricated the portion of the letter that alluded to an extramarital affair to "add to the intensity of the letter." Andrews stated that he said and wrote such statements because he hoped to garner enough attention to warrant prosecution and a prison transfer. Andrews explained, "I knew I had to tell him what I had to tell him. I was willing to sacrifice whatever, to get down here to see my people." Andrews insisted that the letter did not express his actual beliefs about Judge Merritt's work as a judge, and that he never was a party to a matter before Judge Merritt. Andrews testified that he never had any intention of actually harming Judge Merritt or his family.

On May 25, 2000, the jury reached guilty verdicts against Andrews on both counts. On September 14, 2000, a sentencing hearing was held, at which Andrews objected to the Presentence Investigation Report's denial of a reduction in sentence pursuant to U.S.S.G. § 2A6.1(b)(4). That section provides for a reduction in sentence where the threatening communication "involved a single instance evidencing little or no deliberation." The district court denied the

motion without comment or reference to the Presentence Investigation Report. Andrews was sentenced to 48 months incarceration, followed by three years of supervised release.

## B. Procedural Background

The district court entered a final judgment of Andrews's conviction and sentence on September 26, 2000. Andrews filed a notice of appeal on October 10, 2000, four days beyond the applicable deadline, and moved the district court for an extension to file a notice of appeal. The district court granted Andrews's motion for an extension on November 7, 2000.

This court has jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291. Andrews appeals the judgment below on two grounds. First, he argues that the government lacked sufficient evidence to convict him under 18 U.S.C. § 115. Second, Andrews asserts that the district court erred in failing to grant his motion for a downward departure pursuant to U.S.S.G. § 2A6.1(b)(4).

## DISCUSSION

### A. Sufficiency of the Evidence Claim

Andrews argues that because he never had any intention to harm Judge Merritt, there is insufficient evidence in the record to support his conviction. This court reviews a defendant's sufficiency of the evidence claim to consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307,

---

1. The Presentence Investigation Report includes findings that Andrews and James were actually responsible for sending two other threatening letters to federal judges in Oklahoma City and Texas. These findings include

the fact that Andrews's fingerprints were present on one of these letters. However, the government did not question Andrews about these alleged incidents, nor did the government present these facts in its case in chief.

319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Ables*, 167 F.3d 1021, 1032 (6th Cir.1999).

18 U.S.C. § 115 provides in relevant part that, "[w]hoever (A) threatens to assault, kidnap or murder a member of the immediate family of a United States judge or (B) threatens to assault, kidnap, or murder a United States judge with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b)." (ellipses omitted). This court has held that the government can sustain a conviction under this section where it is able to demonstrate that (1) the defendant conveyed a threat of physical harm to a federal official or his family; (2) the threat was intended as an act of retaliation against the federal official; and (3) this threat could reasonably be construed by the person in receipt of the threat to be actually carried out. *See United States v. Vincent*, 681 F.2d 462, 464 (6th Cir.1982). As to this last factor, we have held that the government need not establish that the defendant in fact intended to carry out the threat, but instead that "a reasonable person would have taken [the defendant's] statements seriously." *Id.* "Indeed, a prosecutable threatening communication need not be supported either by evidence of the author's actual ability to carry out his threat, or his actual substantive intent to do so. Rather, if a reasonable person would foresee that an objective rational recipient of the statement would interpret its language to constitute a serious expression of intent to harm ... that message

conveys a true threat." *United States v. Miller*, 115 F.3d 361, 363 (6th Cir.1997). *See also United States v. Smith*, 928 F.2d 740, 741 (6th Cir.1991) ("[W]e set a standard under 18 U.S.C. § 115 which does not require that an actual substantive intent to carry out the threat be present.").

Furthermore, that the author of the threat is incarcerated is irrelevant to a determination of the seriousness of the threat, particularly where he has alluded to outside contacts or is a member of a criminally inclined organization. *See Miller*, 115 F.3d at 363 ("[T]he author's imprisonment does not automatically transmute a facially threatening letter into an innocuous prank."). In *Miller*, this court considered whether a threatening letter to the President of the United States and his family could constitute a credible threat where it was sent by an inmate.[2] The court found that it did, particularly where the author identifies himself to be a member of a hate group. The court reasoned that "an incarcerated individual who may be associated with a radical political organization, a lunatic fringe element, or any other criminally inclined gang or other affiliation may pose a significant risk of igniting or inspiring criminal activity outside the institution." *Id.*

■ Here, the record overwhelmingly supports the government's contention that Andrews violated 18 U.S.C. § 115 by sending the threatening letter to Judge Merritt. Andrews openly admits that he sent the letter to Judge Merritt's chamber knowing that he was violating § 115. While Andrews claims that he did not actually intend to harm Judge Merritt or his family, and that he only sent the letter so that he could obtain a transfer to a prison facility in or near Nashville, those argu-

---

2. In *Miller*, the defendant was convicted pursuant to 18 U.S.C. § 871, which makes unlawful the threat to inflict bodily harm upon

the President of the United States. This court has interpreted § 871 in the same manner as § 115. *See, e.g., Smith*, 928 F.2d at 741.

ments are irrelevant to this court's inquiry. Rather, this court must consider whether the letter constitutes a credible threat. To that end, Andrews wrote to Judge Merritt that he was disgruntled with his work on the bench because it did not appeal to his sensibilities as a member of the Aryan Brotherhood. Andrews warned that, "your place is not secured enough for my people, because we have your every move down." Andrews also wrote, "you may be taken off count [i.e., killed] before you read this, and if not, then only in a few hours you'll be dead. . . ." A reasonable reading of this letter would suggest that Andrews seriously intended to harm Judge Merritt, if not by himself, then through his fellow members of the Aryan Brotherhood. Moreover, the fact that Judge Merritt never actually handled a case involving Andrews or his family is irrelevant to a determination of the credibility of the threat. While this fact was known to Andrews, it was certainly not known by Judge Merritt, nor would it reasonably be known by any other judge upon receipt of such a threat. Because the credibility of the threat is examined from the vantage point of the reasonable recipient, Andrews's argument that he never actually intended to harm Judge Merritt is unavailing.

Because the evidence supporting Andrews's conviction under § 115 is more than ample, we find that any rational trier of fact would find sufficient evidence of Andrews's guilt. Accordingly, we affirm the judgment of the district court.

**B. Denial of Reduction in Sentence Pursuant to U.S.S.G. § 2A6.1(b)(4)**

Andrews appeals the district court's rejection of his motion for a reduction in sentence pursuant to U.S.S.G. § 2A6.1(b)(4). That section provides that where an offense involves threatening or harassing communications, a district court may decrease the defendant's base offense level by four levels if the "offense involved a single instance evidencing little to no deliberation." The Presentence Investigation Report recommended that a reduction under this sentence be denied, as Andrews was likely involved in two other threatening letters sent to judges in Oklahoma and Texas. At the sentencing hearing, Andrews's counsel objected to the findings in the Presentence Investigation Report and argued that Andrews was entitled to the reduction because the facts introduced at trial demonstrated that Andrews did not "think through" his actions and did what he thought would get him a transfer to the Nashville area. The government did not respond to the § 2A6.1(b)(4) objection. Once Andrews's counsel had listed all of the objections to the Presentence Investigation Report, the district court summarily stated, "I am going to overrule all of the objections, except the grouping of the offense."

Andrews argues that the district court was required to make the relevant factual findings as to Andrews's entitlement to a reduction under § 2A6.1(b)(4), and because the district court failed to do so, his sentence should be vacated and remanded for resentencing. We review a district court's factual findings at sentencing for clear error and its assessment of the Sentencing Guidelines *de novo*. *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir.1994).

Fed.R.Crim.P. 32(c)(1) provides that, "for each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." This court has held that Rule 32(c)(1) must be interpreted literally, as "it helps to ensure that defendants are sentenced on the basis of accurate information and provides a clear rec-

ord for appellate courts, prison officials, and administrative agencies who may later be involved in the case." *United States v. Osborne,* 291 F.3d 908, 911 (6th Cir.2002) (quoting *United States v. Tackett,* 113 F.3d 603, 613–14 (6th Cir.1997)). A "controverted matter" includes findings of fact relevant to the determination of the defendant's sentence that the defendant refutes by way of objection. *See United States v. Hurst,* 228 F.3d 751, 760 (6th Cir.2000); *see also United States v. O'Malley,* 265 F.3d 353, 357 (6th Cir.2001). A district court is thus required to resolve factual disputes in assessing whether a reduction or enhancement in sentence is warranted. "If the sentencing court fails to make these factual findings, we must remand for resentencing." *Tackett,* 113 F.3d at 614. *See also United States v. Cook,* 238 F.3d 786, 790 (6th Cir.2001) ("[T]he case was remanded in order for the district court to make specific factual findings in accordance with Fed.R.Crim.P. 32(c)(1), as to why it denied Cook's motion for an acceptance of responsibility reduction.") (citing *United States v. Cook,* No. 97–5943, 1999 WL 220116, at *4 (6th Cir. April 7, 1999) (remanding for resentencing where district court failed to make a factual finding relating to the denial of reduction in sentence for acceptance of responsibility)).

However, this court has found that while Rule 32(c)(1) should be interpreted literally, a technical violation of the rule does not necessarily require remand. *United States v. Parrott,* 148 F.3d 629, 634 (6th Cir.1998). Instead, we have held that Rule 32(c) must be read in conjunction with Fed.R.Crim.P. 52(a), which requires that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See Parrott,* 148 F.3d at 634. Therefore, where the district court's failure to comply with Rule 32(c)(1) has no effect on the defendant's sentence, that error is considered harmless. *Id.* ("In the present case it is clear that the District Court's failure to comply with Rule 32(c)(1) had no effect on the defendant's sentence and therefore constituted harmless error.").

■ The government concedes on appeal that the sentencing court, in failing to make the relevant factual findings as to Andrews's involvement in other threats, "erred in not making specific and independent factual findings to support his denial of the requested downward adjustment." The government insists, however, that any error emanating from the district court's failure to address Andrews's objection is harmless. We agree. Courts have held that a defendant is not entitled to a reduction under § 2A6.1(b)(4) where the undisputed facts reflect that the defendant made a single threat with some, though perhaps not much, deliberation. *See, e.g., United States v. Mattison,* No. 90–6119, 1991 WL 213760 (6th Cir. Oct. 23, 1991) (Finding defendant was not entitled to a reduction under § 2A6.1(b)(4) where he took the time to call the clerk's office to determine the identity of the judge to whom his case would be assigned prior to sending the threat); *United States v. Cothran,* 286 F.3d 173, 179 (3d Cir.2002). Here, Andrews concedes that he and James planned to target Judge Merritt because of his location in Tennessee and planned the contents of the threat beforehand such that they would arouse attention from the authorities. Indeed, Andrews's entire defense, that he threatened Judge Merritt in order to effect a prison transfer, necessarily implies that he invested some deliberation prior to sending the threat. Given these undisputed facts, Andrews is not entitled to a reduction in sentence under § 2A6.1(b)(4). Moreover, public policy reasons dictate that conduct such as Andrews's, that is, attempting to manipulate the prison transfer system by

way of death threat, should not be rewarded with a reduction in sentence.

Because Andrews does not dispute the facts relevant to a finding of deliberation, he is not entitled to a reduction under § 2A6.1(b)(4), and any error committed by the district court is harmless. Therefore, the sentence imposed by the district court stands.

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is **AFFIRMED.**