# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-4081

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

CHARLES E. FULLER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for
the Southern District of Indiana, Terre Haute Division.
No. 02 CR 36—**Larry J. McKinney**, *Chief Judge.*

_____

ARGUED SEPTEMBER 15, 2004—DECIDED OCTOBER 27, 2004

_____


Before FLAUM, *Chief Judge*, and COFFEY and KANNE,
*Circuit Judges*.

KANNE, *Circuit Judge*. Charles E. Fuller pled guilty to
one count of threatening to kill President George W. Bush
in violation of 18 U.S.C. § 871. He now appeals his convic-
tion on grounds preserved in the plea agreement. For the
reasons stated herein, we affirm.


## I. History

Fuller, an inmate at the federal penitentiary in Terre
Haute, Indiana, sent a handwritten letter to the FBI head-

quarters in Washington, D.C. The letter was signed "Tyro" and dated "February 18th, 02." In addition to expressions of anger toward U.S. government leaders, the letter contained references to five bombs at five separate locations and a canister of sarin nerve gas. It concluded with the following: "I will be released soon! Me and my friends are going after all of Americas [sic] rulers! They will pay! Bush is first! He will die first! I will not have a president that is criminal in office! I will kill him myself!"

Pursuant to prison rules, Fuller's name and inmate number were written along with his return address on the envelope. The envelope was marked "Special Mail," a designation normally used for privileged communications so that prison officials do not read their contents. The letter was processed by facilities in New Jersey and Maryland and eventually turned over to the Secret Service.

Fuller has been incarcerated for most of his adult life. Since the age of seventeen he has been in and out of jail due to convictions for robbery, burglary, and theft. At the time Fuller sent the February 2002 letter, he was serving a 46-month sentence for sending three letters threatening President Clinton in 1998.

Fuller argues that his February 2002 letter was not a "true threat" punishable under § 871. He urges the court to adopt a subjective standard, under which only threats that are actually intended to be carried out are punishable. He claims that he did not actually mean to carry out his threat to the President, but that he suffered from a mental disorder known as "institutionalization," which made him fear freedom and engage in conduct designed to avoid release from prison. The district court did not allow Fuller's medical expert to testify regarding his institutionalization, stating that it would be irrelevant under an objective standard for § 871. We agree that this objective standard is proper, and that it was therefore not an abuse of discretion to prohibit Fuller's psychological expert from testifying.

## II.  Analysis

### A.  *The Objective, Reasonable Person Standard for § 871*

We review a district court's interpretation of a statute *de novo*. *United States v. Williams*, 68 F.3d 168, 169 (7th Cir. 1995).

Section 871 provides fines or imprisonment or both for "[w]hoever knowingly and willfully deposits for conveyance in the mail . . . any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . . ." 18 U.S.C. § 871. To sustain a conviction, the government must prove beyond a reasonable doubt that the threat was made knowingly and willfully and that it was a "true threat." *See United States v. Hoffman*, 806 F.2d 703, 706-07 (7th Cir. 1986).

Fuller points out a circuit split regarding whether the government must show subjective intent to prove a "true threat." In *United States v. Patillo*, the Fourth Circuit held that "an essential element of guilt [under § 871] is a present intention either to injure the President, or incite others to injure him, or to restrict his movements . . . ." 438 F.2d 13, 16 (4th Cir. 1971) (en banc). While not explicitly overruling *Patillo*, the Fourth Circuit has recently narrowed the chasm between itself and the other circuits by stating that there are only two essential elements of the offense under § 871: the existence of a true threat and the threat being made knowingly and willfully. *United States v. Lockhart*, 382 F.3d 447, 450 (4th Cir. 2004). The court further clarified that the subjective intent discussed in *Patillo* is simply one way of proving the "knowingly or willfully" element of the offense. *Id.*

We choose not to follow *Patillo* and instead adhere to the objective standard for a "true threat" consistently employed by the court. Under this standard, a communication is a "true threat" if "a reasonable person would foresee that the statement would be interpreted by those to whom the maker

communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President." *Hoffman*, 806 F.2d at 707 (quoting *Roy v. United States*, 416 F.2d 874, 877 (9th Cir. 1969)). The advantages of this objective, reasonable person standard are many, and have been validated by the fact that nearly all of the other circuits have incorporated it.

The First, Second, Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have explicitly adopted the reasonable person, objective standard discussed in *Hoffman*. *See United States v. Fulmer*, 108 F.3d 1486, 1491 (1st Cir. 1997); *United States v. Johnson*, 14 F.3d 766, 768 (2d Cir. 1994); *United States v. Kosma*, 951 F.2d 549, 557 (3d Cir. 1991); *United States v. Manning*, 923 F.2d 83, 85 (8th Cir. 1991); *United States v. Callahan*, 702 F.2d 964, 965 (11th Cir. 1983); *United States v. Vincent*, 681 F.2d 462, 464 (6th Cir. 1982); *United States v. Hart*, 457 F.2d 1087, 1090-91 (10th Cir. 1972); *Roy v. United States*, 416 F.2d 874, 877-78 (9th Cir. 1969). The Fifth Circuit, while not explicitly using the reasonable person test, has also employed an objective standard. *See United States v. Howell*, 719 F.2d 1258, 1260 (5th Cir. 1983) ("A true threat is a serious one, not uttered in jest, idle talk, or political argument. Whether a statement is a true threat is to be decided by the trier of fact. A threat is knowingly made if the maker comprehends the meaning of the words uttered, it is willfully made if the maker voluntarily and intelligently utters the words in an apparent determination to carry out the threat.") (citations omitted).

We believe our approach best protects the safety of the President. As noted by the Third Circuit, a subjective test would hinder the government's ability to prosecute threats against the President, seriously compromising his safety. *United States v. Kosma*, 951 F.2d 549, 556-57 (3d Cir. 1991). Protecting the President's safety was Congress's primary goal in enacting § 871. *See* 53 Cong. Rec. 9378 (1916) (statement of Rep. Webb) ("the Chief Executive of a great Nation like

ours ought to be protected in every way possible, especially in view of the sad experience we have had in losing by assassination three of our beloved Presidents.").

Even setting aside concerns for the President's life, a threat disrupts the activities of the President, his advisors, and his security providers. Preventing these inconveniences and the costs associated with them was another reason for enacting § 871. H.R. Rep. No. 652, 64th Cong., 1st Sess. 1 (1916) (stating that it is the duty of a government to protect its agencies from threats "which would tend to coerce them or restrain them in the performance of their duties"). Disruptions, inconveniences, and substantial costs occur regardless of whether a threat was subjectively intended to be carried out. To require subjective intent for conviction, then, thwarts this goal of the statute. *See Rogers v. United States*, 422 U.S. 35, 47-48 (1975) (Marshall, J., concurring) ("Because [§] 871 was intended to prevent . . . the harm associated with the threat itself, I believe that the statute should be construed to proscribe all threats that the speaker intends to be interpreted as expressions of an intent to kill or injure the President."); *see also United States v. Kelner*, 534 F.2d 1020, 1025 (2d Cir. 1976) ("it is the utterance which the statute makes criminal, not the specific intent to carry out the threat").

Finally, the objective, reasonable person standard does not tread on free speech. Under it, the First Amendment's protection of political hyperbole, jokes, and other constitutionally allowed speech is not diminished. *See Watts v. United States*, 394 U.S. 705, 707-08 (1969) (holding that the following statement, conditional in nature and made at a political rally, was not a true threat: "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."). Requiring the government to establish that the communicator knowingly and willfully made a threat—intending it to be received as a serious threat, regardless of whether he intended to carry it out—ensures that § 871 does not become

technical in nature or lead to punishment for innocent acts. *See Rogers*, 422 U.S. at 47 (Marshall, J., concurring).

Under this standard, the jury instructions approved by the district court in Fuller's case were proper. They differed from those given in *Hoffman* only in that they did not include the following: "And you must be further convinced beyond a reasonable doubt that the statement was not the result of mistake, duress, or coercion." (R. at 52.) Fuller contends that failing to include this sentence lessens the burden of proof on the government and eliminates an element of § 871. We disagree.

As discussed above, the only two essential elements for this crime are the existence of a true threat to the President and that the threat was made knowingly and willfully. The government does not have the burden to prove that the threat in question was not a product of mistake, duress, or coercion. *See United States v. Aman*, 31 F.3d 550, 553-56 (7th Cir. 1994) (citing *Hoffman* for the definition of a "true threat" but not requiring the government to show the absence of mistake, duress, or coercion); *see also United States v. Khorrami*, 895 F.2d 1186, 1192-94 (7th Cir. 1990) (same). Mistake, duress, and coercion are affirmative defenses and are only required in jury instructions if raised by defendant. These defenses were not raised by Fuller, and it is difficult to see from the record before us how they could be supported.

In the alternative to requiring a subjective intent to carry out the threat, Fuller urges us to require a showing of apparent present ability to carry it out. Fuller points to no authority for this proposition. As far as we can tell, it has never been an element of § 871. *See, e.g., United States v. Miller*, 115 F.3d 361, 363 (6th Cir. 1997); *Hoffman*, 806 F.2d at 707-08; *Kelner*, 534 F.2d at 1023. Mandating such a showing would thwart the efficiency purpose of § 871 just as a subjective intent requirement would; a threat causes

disruptions, inconveniences, and costs even if its maker is unable to carry through with it. In any case, the fact that Fuller was incarcerated at the time he made the threat does not mean that he would automatically be found incapable of carrying it out. *See Miller*, 115 F.3d at 363. As noted by the Sixth Circuit, an incarcerated person could feasibly direct or inspire "a radical political organization, a lunatic fringe element, or any other criminally inclined gang" with which he has ties to carry out his threat from outside prison. *Id.*

### B.   Exclusion of Dr. Murphy's Testimony

We review a district court's ruling to exclude expert testimony for abuse of discretion. *United States v. Davis*, 772 F.2d 1339, 1344 (7th Cir. 1985).

Fuller requested permission to have Dr. Murphy testify regarding his psychological condition and history. Fuller claims that Dr. Murphy would have testified that he made the threat because of his desire to stay in prison and had no intention of carrying out the threat. Dr. Murphy would then opine that the February 2002 letter was not a "true threat" in violation of § 871. In light of the objective standard laid out above, Fuller's subjective intent to carry out the threat is not relevant to the question of whether the letter constituted a "true threat." The jury's opinion as to whether a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to kill the President is the only opinion that matters.

Burdening the jury with testimony about why Fuller might have sent the letter, when such information is not relevant to the question of legal guilt, would merely have been confusing to the jury. The testimony was properly excluded under Federal Rule of Evidence 403. Lack of subjective intent is not a defense to § 871, so prohibiting Dr. Murphy from

testifying did not deprive Fuller of any constitutional right to present his defense and was well within the court's discretion.

### III. Conclusion

Even if Fuller threatened President Bush because he suffered from "institutionalization" and desired to stay in prison (which very well could be true), his letter constituted no less a violation of § 871. We adhere to the objective, reasonable person standard for § 871 and AFFIRM the conviction.

A true Copy:

        Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*